### BRAUNER et al. v. UNITED STATES.

### REYNOLDS v. UNITED STATES.
Civ. Nos. 9793, 10142.

United States District Court
E. D. Pennsylvania.
June 30, 1950.

Charles J. Biddle, Francis Hopkinson, Philadelphia, Pa., for plaintiffs.

Gerald A. Gleeson, U. S. Atty., Thomas J. Curtin, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

KIRKPATRICK, Chief Judge.

These two actions, consolidated for trial, were brought under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq. to recover damages for the deaths of the plaintiffs' husbands, civilian ·passengers in an Army B-29 which crashed at Waycross, Georgia, on October 6, 1948. The plaintiffs have moved, under Rule 34, Fed.Rules Civ. Proc., 28 U.S.C.A., for an order requiring the production by the defendant of written statements of three witnesses, soldiers who were in the plane and escaped death by bailing out, and also the report and findings of the official investigation made by the defendant. The defendant opposes the granting of the motion on the grounds (1) as to all the documents, that the plaintiffs have

not shown good cause for their production, (2) as to the report and findings of the investigation, that they are privileged. While the exact date does not appear, it is conceded that the statements were taken and the investigation conducted within a very short time after the accident. These suits were begun on June 21, 1949.

It is clear from the carefully worded order amending the opinion of the Court of Appeals in Alltmont v. United States, 3 Cir., 177 F.2d 971, 979, that the Court wanted to make sure that what was said in the original opinion would not be seized upon as support for the proposition that if a party seeking discovery gets the name and address of a witness he cannot, under any circumstances, get a statement which the witness has given. And the Court also carefully avoided ruling that even when the witnesses are accessible and can be examined without undue hardship and delay their statements are necessarily immune. The Court merely said that in such a case "it is quite possible" that the party seeking production of the statements may not be able to show good cause. The Alltmont case, supra, decided that *copies* of such statements cannot be obtained without a showing of good cause, by means of procedure under Rule 33. Where, as here, the motion is under Rule 34, the production of a statement may still be obtained provided good cause is shown. Whether, in the present case, good cause appears is, therefore, properly before this Court.

Preliminarily, it may be said that this is not the case of statements obtained by an attorney or of statements obtained by others under the attorney's direction or for the purpose of aiding the attorney in preparing for trial. Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, dealt with statements secured directly by the attorney himself and the gist of the decision was that considerations of policy arising from the function of the lawyer in the adversary procedure by which our courts administer justice require that in such case the party seeking discovery must show circumstances of an exceptional nature in order to establish good cause. In

the Alltmont case, supra, the opinion of the Court of Appeals extends the doctrine of Hickman v. Taylor to cover statements obtained by others for the attorney in connection with his preparation for trial. As stated, the statements asked for in the present case fall into neither category.

Concededly, in determining what amounts to good cause under Rule 34, the trial court has a wide discretion. Every case presents its own particular problems and any attempt to establish rigid rules would seriously impair the flexibility and efficiency of the federal discovery procedure. With this in mind, the facts bearing on this motion as they appear from the record and from the statements of counsel at the argument will be examined.

The plaintiffs reside within a few miles of Philadelphia. The three witnesses whose names have been supplied are Army Air Force personnel stationed at three different Army air bases in Florida. The burden, expense and inconvenience to the plaintiffs involved in taking their depositions are factors for the Court to consider in exercising its discretion, though of themselves they do not necessarily establish good cause. It was suggested at the argument that the defendant might bring the witnesses to Philadelphia or even pay the expenses of the plaintiffs' attorney to Florida but I do not understand that any binding commitment to that effect has been made nor have I the power to order it under this motion to produce. I have received no intimation that the suggestion made by the government attorney would be approved or carried into effect by the Army Command.

However, assuming that it is possible to take the depositions of the witnesses in question without undue burden upon the plaintiffs, the fact remains that, in view of the nature of this particular case, disclosure of the contents of their written statements is necessary to enable the plaintiffs to properly prepare their cases for trial, and furnishes good cause for production.

The plaintiffs have no knowledge of why the accident happened. So far as such knowledge is obtainable, the defendant has it. When the airplane crashed, it was

wrecked and much of the evidence of what occurred was destroyed. Only persons with long experience in investigating airplane disasters could hope to get at the real cause of the accident under such circumstances. The Air Force appointed a board of investigators immediately after the accident and examined the surviving witnesses while their recollections were fresh. With their statements as a starting point the board was able to make an extensive investigation of the accident. These statements and the report of the board's investigation undoubtedly contain facts, information and clues which it might be extremely difficult, if not impossible, for the plaintiffs with their lack of technical resources to obtain merely by taking the depositions of the survivors.

I am not suggesting that the witnesses on deposition would not answer the questions asked them truthfully but, in a case like this, in which seemingly trivial things may, to the expert, furnish important clues as to the cause of the accident, the plaintiffs must have accurate and precise firsthand information as to every relevant fact, if they are to conduct their examination of witnesses properly and to get at the truth in preparing for trial. This only the statements can give them. I would not go so far as to say that the witnesses would necessarily be hostile. However, they are employees of the defendant, in military service and subject to military authority and it is not an unfair assumption that they will not be encouraged to disclose, voluntarily, any information which might fix responsibility upon the Air Force.

The answers to the interrogatories are far short of the full and complete disclosure of facts which the spirit of the rules requires. True, the defendant has produced a mass of documents but these refer to the past performance of the plane and service records of the pilots and are essentially negative. When it comes to the interrogatory "Describe in detail the trouble experienced", the answer is, "At between 18,-500 or 19,000 feet manifold pressure dropped to 23 inches on No. one engine". Obviously, the defendant, with the report and findings of its official investigation in its possession, knows more about the accident than this.

Beside all this, the accident happened more than 18 months ago and what the crew would remember now might well differ in important matters from what they told their officers when the event was fresh in their minds. Even in simple accident cases requiring no technical knowledge to prepare for trial, the fact that a long period of time has elapsed between the accident and the taking of the deposition of a witness gives a certain unique value to a statement given by him immediately after the accident when the whole thing was fresh— particularly when given to an employer before any damage suit involving negligence has begun.

For these reasons I conclude that good cause appears for the production of all documents which are subject to the motion.

■ The immunity which the Government asserts for the report and findings of the official investigation, so far as it is based upon the express provision of the Statute, R.S. § 161, 5 U.S.C.A. § 22, and the rules and regulations of the Department of Justice, has been fully considered and held not sustainable by this Court in O'Neill v. United States (the Alltmont case), D.C., 79 F.Supp. 827. Much of what was said in that case on the point is pertinent here and need not be repeated. And while the decision was reversed upon other grounds, the question of privilege was not dealt with by the Court of Appeals. The action in the Alltmont case, supra, was under the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq., but the provision of the Tort Claims Act, under which this action is brought, to the effect that the United States shall be liable "in the same manner" as a private individual, is the equivalent of "according to * * * the rules of practice obtaining in like cases between private parties" in the Suits in Admiralty Act, 46 U.S.C.A. § 743. Wunderly v. United States, D.C., 8 F.R.D. 356.

Again, as in the Alltmont case, supra, the Government does not here contend that this is a case involving the well-recognized

472

common-law privilege protecting state secrets or facts which might seriously harm the Government in its diplomatic relations, military operations or measures for national security.

In effect, the Government claims a new kind of privilege. Its position is that the proceedings of boards of investigation of the armed services should be privileged in order to allow the free and unhampered self-criticism within the service necessary to obtain maximum efficiency, fix responsibility and maintain proper discipline. I can find no recognition in the law of the existence of such a privilege. Substantially, this same claim has been considered and rejected in at least two District Court cases. Bank Line Limited v. United States, 68 F. Supp. 587; Id., 76 F.Supp. 801, and Cresmer v. United States, 9 F.R.D. 203. The first of these cases was under the Suits in Admiralty Act and the second under the Tort Claims Act, but the privilege claimed was the same in both. I agree with the results of these decisions and conclude that the report and findings in this case are not privileged.

The defendant's motion to quash is denied and the plaintiffs' motion to produce is granted.